UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES D. ROBINSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO.: 1:11-cv-01591-DML-SEB |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social Security, | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## Decision on Judicial Review

Plaintiff James D. Robinson applied on March 24, 2008, for Disability

Insurance Benefits (DIB) and Supplemental Security Income disability benefits

(SSI) under the Social Security Act, alleging that he has been disabled since

December 18, 2007, because of extreme pain in his back, legs, and feet, high blood

pressure, and high cholesterol.  Acting for the Commissioner of the Social Security

Administration following a hearing on January 13, 2010, an administrative law

judge ("ALJ") found that Mr. Robinson is not disabled. The national Appeals

Council denied review of the ALJ's decision, rendering the ALJ's decision for the

Commissioner final. Mr. Robinson filed this civil action under 42 U.S.C. § 405(g) for

review of the Commissioner's decision.  The parties consented to the magistrate

judge conducting all proceedings and ordering the entry of judgment in accordance

with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

Mr. Robinson contends that the ALJ's determination of his residual functional capacity is not supported by substantial evidence because (1) it is incompatible with Mr. Robinson's descriptions of the severity and limiting effects of his medical impairments, which the ALJ erroneously discounted on grounds that are illogical or without support in the record and (2) the ALJ failed properly to incorporate a functional limitation tied to Mr. Robinson's moderate difficulties in sustaining concentration, persistence, or pace.  As discussed below, the court agrees with Mr. Robinson that the ALJ's credibility determination is flawed, requiring remand.  The ALJ may accept additional evidence and testimony and may—but is not required to—examine anew limitations based on Mr. Robinson's difficulties in sustaining concentration, persistence, or pace.

## Standard for Proving Disability

To prove disability, a claimant must show that he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A) (DIB benefits);  42 U.S.C. § 1382c(a)(3)(A) (SSI benefits).[1]  Mr. Robinson is disabled if his impairments are of such severity that he is not able to

---

[1]      Two programs of disability benefits are available under the Social Security Act:  DIB under Title II for persons who have achieved insured status through employment and withheld premiums, 42 U.S.C. § 423 *et seq.*, and SSI disability benefits under Title XVI for uninsured individuals who meet income and resources criteria., 42 U.S.C. § 1381 *et seq.*  The court's citations to the Social Security Act and regulations promulgated by the Social Security Administration are those applicable to DIB benefits.  For SSI benefits, material identical provisions appear in Title XVI and at 20 C.F.R. § 416.901 *et seq.*

perform the work he previously engaged in and, if based on his age, education, and work experience, he cannot engage in any other kind of substantial gainful work that exists in significant numbers in the national economy. 42 U.S.C. § 423(d)(2)(A). The Social Security Administration ("SSA") has implemented these statutory standards by, in part, prescribing a five-step sequential evaluation process for determining disability. 20 C.F.R. § 404.1520.

Step one asks if the claimant is currently engaged in substantial gainful activity; if he is, then he is not disabled. Step two asks whether the claimant's impairments, singly or in combination, are severe; if they are not, then he is not disabled. A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). The third step is an analysis of whether the claimant's impairments, either singly or in combination, meet or equal the criteria of any of the conditions in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. The Listing of Impairments includes medical conditions defined by criteria that the SSA has pre-determined are disabling, so that if a claimant meets all of the criteria for a listed impairment or presents medical findings equal in severity to all the criteria for the most similar listed impairment, then the claimant is presumptively disabled and qualifies for benefits. *Sims v. Barnhart,* 309 F.3d 424, 428 (7th Cir. 2002).

If the claimant's impairments do not satisfy a listing, then his residual functional capacity (RFC) is determined for purposes of steps four and five. RFC is a claimant's ability to do work on a regular and continuing basis despite his

impairment-related physical and mental limitations.  20 C.F.R. § 404.1545.  At the

fourth step, if the claimant has the RFC to perform his past relevant work, then he

is not disabled.  The fifth step asks whether there is work in the relevant economy

that the claimant can perform, based on his age, work experience, and education

(which are not considered at step four), and his RFC; if so, then he is not disabled.

The individual claiming disability bears the burden of proof at steps one

through four.  *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987).  If the claimant meets

that burden, then the Commissioner has the burden at step five to show that work

exists in significant numbers in the national economy that the claimant can

perform, given his age, education, work experience, and functional capacity.  20

C.F.R. § 404.1560(c)(2); *Young v. Barnhart,* 362 F.3d 995, 1000 (7th Cir. 2004).

### Standard for Review of the ALJ's Decision

Judicial review of the Commissioner's (or ALJ's) factual findings is

deferential.  A court must affirm if no error of law occurred and if the findings are

supported by substantial evidence.  *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th

Cir. 2001).  Substantial evidence means evidence that a reasonable person would

accept as adequate to support a conclusion.  *Id.*  The standard demands more than a

scintilla of evidentiary support, but does not demand a preponderance of the

evidence.  *Wood v. Thompson,* 246 F.3d 1026, 1029 (7th Cir. 2001).

The ALJ is required to articulate a minimal, but legitimate, justification for

his decision to accept or reject specific evidence of a disability.  *Scheck v. Barnhart,*

357 F.3d 697, 700 (7th Cir. 2004).  The ALJ need not address every piece of evidence

in his decision, but he cannot ignore a line of evidence that undermines the

conclusions he made, and he must trace the path of his reasoning and connect the

evidence to his findings and conclusions.  *Arnett v. Astrue,* 676 F.3d 586, 592 (7th

Cir. 2012); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

**Analysis**

**I.      The ALJ's Sequential Findings**

At step one, the ALJ determined that Mr. Robinson had not engaged in

substantial gainful activity since December 1, 2007, his alleged onset date of

disability.  At step two, the ALJ identified back disorders, obesity, hypertension,

and affective disorders as severe impairments, and decided at step three that no

listings were met.  The ALJ next determined Mr. Robinson's residual functional

capacity (RFC) for purposes of conducting the required analysis at steps four and

five.  He decided that Mr. Robinson can perform a modified form of light work—he

can lift 10 pounds frequently and 20 pounds occasionally but should not perform

frequent power gripping with his right hand; can sit, stand, or walk eight hours of

the work day; should not kneel, crawl, or climb ropes, ladders, or scaffolds; and

should be limited to simple, repetitive work.  This RFC is an adoption of opinions

regarding Mr. Robinson's functional capacity given at the hearing by Dr. Arthur

Lorber, an orthopedist, and by Dr. Jack Thomas, a psychologist.  With this RFC,

Mr. Robinson was not capable of performing his past relevant work but, based on an

opinion of the vocational expert, the ALJ determined there were significant

5

numbers of jobs in the relevant economy that Mr. Robinson could perform, and thus that he is not disabled.

## II.    Mr. Robinson's Assertions of Error

Mr. Robinson asserts that the Commissioner's decision is erroneous because the RFC (a) reflects an adverse finding regarding Mr. Robinson's credibility without substantial support in the record and (b) violates the *O'Connor-Spinner* line of cases because the limitation to simple and repetitive work does not appropriately capture his moderate difficulties with concentration, persistence, or pace. The court will first address the *O'Connor-Spinner* issue and then Mr. Robinson's allegation of error related to the credibility finding.

## III.    The simple and repetitive work limitation included in the RFC was sufficiently related to Mr. Robinson's mental difficulties.

In *O'Connor-Spinner v. Astrue,* 627 F.3d 614 (7th Cir. 2010), the Seventh Circuit determined that the ALJ erred in relying on jobs information provided by a vocational expert because the ALJ had determined that the claimant had moderate difficulties in concentration, persistence, or pace ("CPP"), but none of the series of hypotheticals posed to the VE specifically noted this limitation. Where a claimant's moderate difficulties in CPP stem from anxiety or other stress, for example, a hypothetical that references low-stress work, and a VE's opinion based on that hypothetical, sufficiently account for the mental limitation. *Id.* at 619. But, the court ruled, an ALJ's hypothetical to a VE limiting a claimant to "unskilled" work does not necessarily exclude from the expert's consideration jobs that a person with moderate difficulties relating to CPP cannot perform. Without something else in

6

the record suggesting a tie between a restriction to "unskilled" work and the source of the claimant's difficulties in this area, and an indication that the VE accounted for the claimant's particular deficiencies, remand is appropriate.  *See id.* at 620 (noting other cases in which reference to unskilled work insufficiently accounts for a claimant's moderate limitations on concentration, persistence, or pace).

Contrary to Mr. Robinson's argument, *O'Connor-Spinner* does not stand for the proposition that an unskilled work limitation never accounts for a claimant's moderate difficulties in CPP.  Rather, *O'Connor-Spinner* reinforces the general standard in disability cases requiring a logical bridge between evidence and conclusion, and some indication that the VE's testimony regarding available jobs took into account limitations the ALJ found applied to the claimant. Where there is a logical connection in the ALJ's decision between a finding of difficulties with CPP and a work restriction, the ALJ has not violated the principles addressed in *O'Connor-Spinner.*

The ALJ's determination that Mr. Robinson suffered from deficits in CPP, *and* that a restriction to simple and repetitive work, was based on the opinion of Dr. Jack Lawson.  Dr. Lawson is a psychologist who testified at the administrative hearing, and the VE heard his testimony regarding Mr. Robinson's mental processes and work abilities.  Dr. Lawson summarized the mental health records, including the results of a consultative psychological evaluation of Mr. Robinson in February 2008, a separate examination that found his attention span, concentration, and memory process were within normal limits, findings that his intellectual abilities

lay in the high borderline to low average range, and that he has a pain disorder associated with his general medical condition. Dr. Lawson opined that Mr. Robinson had moderate difficulties in concentration because of his pain disorder and a learning disability related to reading, that could be accommodated by a limitation to work that is simple and repetitive. (R. 72-74). Mr. Robinson's lawyer did not question Dr. Lawson at the hearing or challenge his view that a restriction to simple and repetitive work was sufficient to account for the concentration difficulties Mr. Robinson experiences because of his pain and reading problems.

This case does not present an *O'Connor-Spinner* problem. The ALJ's limitation to simple and repetitive work in the RFC is supported by substantial evidence. It was based on Dr. Lawson's expert opinion, which the VE heard and presumably considered. *O'Connor-Spinner*, 627 F.3d at 614 (court may assume VE was familiar with the claimant's limitations "when the record shows that the VE independently reviewed the medical record or heard testimony directly addressing those limitations").

## IV.    The ALJ's credibility determination is flawed.

An ALJ is required to consider a claimant's statements about his symptoms and how they affect his daily life and ability to work, 20 C.F.R. § 404.1529(a), but he is not required to accept the claimant's statements blindly. *Rucker v. Chater,* 92 F.3d 492, 496 (7th Cir. 1996) (ALJ not required to give full credit to every statement of pain or find a claimant disabled because he does not think he can work). Because the ALJ evaluates credibility by questioning and evaluating a live witness, the

ALJ's credibility finding is reviewed deferentially and will not be set aside unless it is "patently wrong."  *Craft v. Astrue,* 539 F.3d 668, 678 (7th Cir. 2008); *Luna v. Shalala,* 22 F.3d 687, 690 (7th Cir. 1994).

The ALJ's decision contains an oft-repeated boilerplate statement that the ALJ found that Mr. Robinson's subjective complaints of the intensity, persistence, and limiting effects of his medical impairments "are not credible to the extent they are inconsistent with the above residual functional capacity assessment."  As the Seventh Circuit has explained, this boilerplate, unhelpful as it is anyway, also gets things backward because a claimant's credibility is assessed as an *input* to the ALJ's determination of an appropriate RFC.  One does not first decide the RFC and then reject as not credible anything inconsistent with it.  *Bjornson v. Astrue,* 671 F.3d 640, 645-46 (7th Cir. 2012).

An ALJ's use of this boilerplate language is not in itself grounds for remand[2] so long as the decision otherwise reflects an appropriate assessment of the claimant's credibility.  *Filus v. Astrue,* 694 F.3d. 863, 868 (7th Cir. 2012).   The ALJ must state reasons for the weight he gives to the claimant's statements so that the claimant and subsequent reviewers have a fair sense of how the claimant's testimony was assessed. *Brindisi v. Barnhart,* 315 F.3d 783, 787-88 (7th Cir. 2003) (ALJ must comply with SSR 96-7p in making a credibility determination by articulating the reasons behind the determination).

---

[2]      But this court is troubled that ALJs continue to use it, given the courts' disdain for it and its patent logical flaw.

As noted previously, the ALJ determined that Mr. Robinson has the functional ability to perform a job that requires him to stand or walk eight hours in a work day.  This sharply contrasts with Mr. Robinson's statements that he is debilitated by the constant, excruciating pain he feels in his back, down his legs, and in his feet.  He testified that he must stay off his feet as much as possible.  Mr. Robinson suffers from severely highly-arched feet, a condition known as *Pes Cavus*. He has seen numerous doctors, including back and foot doctors and pain management doctors for many years to complain of excruciating pain.  And, according to Mr. Robinson (and not challenged by the ALJ), Mr. Robinson was placed on medical leave around October 2007 at his factory job that he held for more than 20 years at Borg Warner because of the foot and back problems and excruciating pain.

Mr. Robinson's medical records are voluminous and reflect numerous attempts by his doctors to find a reason his obvious foot deficiency causes such terrible pain.  The pain is incongruent with the objective medical evidence, but that does not make the pain any less real for Mr. Robinson.  And an ALJ may not discount the credibility of a claimant's statements about the intensity of his pain and its limiting effects solely because they are inconsistent with the objective medical record.  *Carradine v. Barnhart,* 360 F.3d 751, 766 n.13 (7th Cir. 2004) (claimant's statements about the intensity and persistence of his pain cannot be rejected solely because the objective medical evidence does not support them).

Here, the ALJ cited other reasons for disbelieving Mr. Robinson, but many are not supported by the record and the ALJ did not discuss some critical evidence (like the scores of evaluations from visits to a pain clinic and a doctor's statement that it seemed most of his pain stemmed from overuse and that a more sedentary job may be in his best interests) supportive of Mr. Robinson's credibility.  With the following examples of ways in which the ALJ's credibility determination lacks support, the court finds it patently wrong.  It is not possible to assess from the ALJ's decision whether his credibility determination would be different without them, and the court must thus remand.

1.  <u>Use of a cane</u>

The ALJ criticized Mr. Robinson's use of a cane because there was no evidence that it had been prescribed for him to use.  Mr. Robinson did not claim it had been prescribed and stated that he bought and has used it for a long time because it helps his stability.  The ALJ does not suggest that Mr. Robinson was using a cane to fake debility.  Many records recite that he is using a cane.  Mr. Robinson's medical records show that his doctors, including pain specialists, have been aware that he uses a cane, but none has said that he does not need it or should not be using it.   A disability claimant's use of a cane without a prescription appears to be a common observation in discounting the credibility of disability claimants, but there is nothing inherently suspicious about it.  It can be true that from a strict medical perspective, a person does not *need* a cane to ambulate appropriately and also true that a claimant honestly and rationally feels too

11

unstable, especially with pain, without a cane.  *See Parker v. Astrue,* 597 F.3d 920,

922 (7th Cir. 2010) ("Absurdly, the administrative law judge thought it was

suspicious that the plaintiff uses a cane, when no physician had prescribed a

cane.").

> 2.  <u>Somatic concerns</u>

The ALJ stated that Mr. Robinson is "noted to exaggerate his physical

complaints and to be preoccupied with somatic concerns and pain."  This is based,

apparently, on language in a report from a state agency psychological evaluation

conducted on February 15, 2008.  This reference does not mean, however, that Mr.

Robinson is faking his pain.  A somatic disorder is one that is defined by a person's

excessive concerns about his physical symptoms or health, and may take the form of

a physical sensation of pain.  *See, e.g., Somatic Symptom Disorders,*

http://www.dsm5.org (last visited March 6, 2013).  A person suffering from complex

somatic symptom disorder suffers authentically even if the suffering cannot be

medically explained.  They "typically experience distress and a high level of

functional impairment," and there may be a "high level of medical care utilization."

The consultative examiner's reference to preoccupation with somatic concerns and

pain does not necessarily mean that Mr. Robinson was faking it; just as easily, and

perhaps more likely, given Mr. Robinson's record of medical treatment, the

comment reinforces the likelihood that Mr. Robinson truly suffers pain, even if the

doctors can't explain why.

3.  Collection of unemployment benefits

During the administrative hearing, the ALJ was preoccupied by the fact that

Mr. Robinson had applied for and collected unemployment insurance benefits,

apparently for three quarters in 2009 after the Borg Warner plant was shuttered.

(Mr. Robinson was formally laid off at that time even though he had been on

medical leave for the previous 18 months.)  The ALJ never asked Mr. Robinson

about why he had applied for unemployment benefits while he also claimed to be

disabled, and the ALJ's comments to Mr. Robinson's lawyer at the outset of the

hearing suggest that the ALJ did not believe much inquiry, if any, into Mr.

Robinson's disability was necessary because he had collected unemployment

benefits.  The receipt of unemployment benefits is not an absolute bar to a disability

determination, and an ALJ should ask a claimant to explain the discrepancy

between his disability claim and his receipt of unemployment benefits, which

requires certification that one is able to, and is looking for, work.

The Social Security Administration recognizes that dire financial

circumstances may force a claimant to apply for unemployment compensation

benefits, and thus his application for and receipt of benefits may not in fact reflect

poorly on him.  A memorandum dated November 15, 2006, authored by Frank A.

Cristaudo, Chief Judge of SSA, to Regional Chief Judges and Regional Office

Management Teams, states that the receipt of unemployment insurance is only one

of many factors to be considered in determining whether a claimant is disabled, and

that an ALJ should look at the totality of circumstances in deciding the significance

of an application for unemployment benefits.  *See also Richards v. Astrue,* 370 Fed. Appx. 727, 732, (7th Cir. Apr. 13, 2010) (claimant may be able to explain that desperate financial straits forced her to certify an ability to work even though she was disabled at the time).

Mr. Robinson was nearly 50 years old and living with his parents when he collected unemployment benefits.  Those circumstances suggest dire financial straits, and the ALJ should have given Mr. Robinson an opportunity to explain his receipt of unemployment benefits before determining that that circumstance reflects so poorly on his credibility that the other substantial evidence that he suffers excruciating pain should be discounted.

   4.  Failure to pay for treatment

Another reason the ALJ disbelieved Mr. Robinson's complaints of pain was his failure to pay for a spinal stimulator machine that had been recommended for him.  Mr. Robinson testified that the machine costs $23,000 and he could not possibly afford that treatment.  The ALJ found it significant that there was no evidence that Mr. Robinson "tried to pursue any financial arrangements, which is hardly compatible with severe, intractable pain." (R. 22).  In the court's view, the ALJs criticism is unwarranted.  One wonders what possible financial arrangement would be available to Mr. Robinson—a single man nearly 50 years old who lives with his parents and has no job—to secure $23,000 for this treatment.  *See Craft v. Astrue,* 539 F.3d 668, 679 (7th Cir. 2008) (improper for ALJ to draw negative

**14**

inference as to claimant's credibility because of lack of medical treatment where, among other things, it appeared that the claimant could not afford the treatment).

## Conclusion

For the foregoing reasons, the Commissioner's decision is REVERSED and REMANDED for rehearing pursuant to 42 U.S.C. § 405(g)(sentence four).

So ORDERED.


Date: ___03/13/2013___

*Debra McVicker Lynch*
Debra McVicker Lynch
United States Magistrate Judge
Southern District of Indiana


**Distribution:**

**All ECF-registered counsel of record via email generated by the court's ECF system**